OPINION
{¶ 1} Defendant-appellant, Roger Faubel, appeals from two Mahoning County Common Pleas Court, Domestic Relations Division judgments finding him in contempt and sentencing him to jail for failure to comply with support orders.
 {¶ 2} Appellant and plaintiff-appellee, Niki Faubel, were married for approximately 19 years. They had one child together. On May 6, 2003, the trial court filed an agreed judgment entry of divorce. The divorce decree provided that appellant was to pay $1,000 per month for child support. Additionally, the decree ordered appellant to pay off $70,000 worth of arrearages. It ordered him to pay $1,000 per month through June 2004, when his child support obligation was to terminate due to the child's emancipation, and then $2,000 per month beginning in July 2004 until the total sum for the arrearage equaled $70,000. Additionally, the decree ordered appellant to pay appellee spousal support of $2,500 per month for 72 months, retroactive to November 2002. Despite the fact that this was an agreed judgment of divorce, appellant filed an appeal from it. This court affirmed the agreed divorce judgment. See Faubel v. Faubel, 7th Dist. No. 03-MA-89, 2004-Ohio-6502.
 {¶ 3} On November 14, 2003, the trial court found appellant in contempt for failure to pay support as ordered. The court sentenced him to 30 days in jail, stayed the sentenced, and provided appellant with an opportunity to purge the contempt by making his support obligation current within 120 days.
 {¶ 4} Appellant did not purge himself of the contempt and appellee filed a motion to enforce the previously ordered sentence. On August 4, 2004, the trial court held a hearing and granted in part and denied in part appellee's motion. It granted appellant until December 12, to purge himself of his previous contempt finding and the 30-day sentence. It also granted appellee a lump sum judgment of $50,450 for the arrearage.
 {¶ 5} In a separate entry, the court found that as of June 6, the parties' child was emancipated and appellant's child support obligation terminated as of that date. However, the court noted that appellant was to continue with his spousal support obligation of $2,500 per month and was to now pay $2,000 per month towards his existing child support arrearage for a monthly total of $4,500.
 {¶ 6} On November 30, appellee filed a motion to impose the prior sentence and to show cause for additional contempt, among other things. She alleged that not only had appellant failed to purge the previous contempt by paying past-due support totaling $50,450, but he had also failed to comply since August 4 with the court's order to stay current in his obligations.
 {¶ 7} On December 17, the trial court entered a judgment finding that appellant failed to comply with its previous orders. Therefore, the court ordered appellant to serve the 30-day jail sentence.
 {¶ 8} That same day, the court entered another judgment finding appellant in contempt for a second time pursuant to appellee's motion. It sentenced appellant to 60 days in jail and fined him $500. The court then stayed the sentence until February 1, 2005, giving appellant this time to purge the contempt.
 {¶ 9} On January 31, 2005, appellant filed a motion to further stay his jail sentence. For support, appellant stated that pursuant to the divorce decree, he had an estimated yearly income of $150,000 and his support obligations were based on this income. He alleged that since the divorce his income had decreased by more than one-half. Therefore, he asked that the court stay his sentence because the reduction in his income made it impossible for him to comply with his support orders. Furthermore, he argued that serving a 60-day sentence, in addition to the 30-day sentence he had already received, would irreparably harm his business, which is his sole source of income. Finally, he stated that he would pay $15,000 towards his obligation, which he borrowed on his wife's credit card.
 {¶ 10} On February 3, the court stayed appellant's sentence until further order. On March 16, the court put on another order staying appellant's sentence until May 12, at which time the court would hold a hearing to review appellant's payments and any additional arguments.
 {¶ 11} The court held the scheduled hearing. Appellant testified at the hearing regarding his income, payments, and other financial matters over the past few years. The court entered its judgment on June 2. It ordered that its previous sentence of 90 days[1] be imposed. The court further ordered that appellant was to serve the sentence every weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m. commencing June 10. The trial court granted appellant a stay of execution of his sentence pending appeal but ordered him to continue to pay his monthly obligation.
 {¶ 12} Appellant filed a timely notice of appeal on June 13, 2005.
 {¶ 13} On July 28, appellee filed a motion to vacate the stay of execution, motion to show cause for contempt, and motion for attorney fees. For cause, she stated that appellant had failed to comply with that part of the court's order that he continue to pay his monthly obligation.
 {¶ 14} The court held a hearing on the motion. At the hearing, appellant testified regarding his finances and why he found it to be impossible to make his support payments. The court entered its judgment on October 28, 2005. It granted appellee's motion and ordered appellant to serve his 90-day[2]
sentence. The court stated that appellant could purge his contempt by paying current his support obligation. The court further found appellant to be in contempt again for failure to comply with the ongoing court orders. It therefore sentenced him to an additional 120 days in jail and again stated that he could purge his contempt by paying current his support obligation. The court ordered appellant to serve his sentence every weekend from Friday night to Sunday night beginning November 4, 2005, until he completes the 210 days sentenced (the 90-day sentence plus the 120-day sentence).
 {¶ 15} Appellant filed a timely notice of appeal from this judgment entry on November 14, 2005. Appellant filed a motion for stay with this court, which we denied. Appellant's two appeals are consolidated for purposes of this opinion.
 {¶ 16} In his first appeal appellant raises two assignments of error, the first of which states:
 {¶ 17} "THE TRIAL COURT COMMITTED AN ERROR OF LAW AND ABUSED ITS DISCRETION IN SENTENCING APPELLANT FAUBEL TO NINETY (90) DAYS IN JAIL WHEN (1) IT WAS ONLY HIS SECOND FINDING OF CONTEMPT AND (2) THE COURT HAD PREVIOUSLY SENTENCED APPELLANT FAUBEL TO ONLY SIXTY (60) DAYS IN JAIL FOR THE SAME CONTEMPT FINDING."
 {¶ 18} Here appellant makes two arguments. First, he argues that the trial court violated R.C. 2705.05(A) when it ordered him to serve a 90-day sentence on his second finding of contempt. Second, he asserts that the court erred in converting his previously ordered 60-day sentence into a 90-day sentence.
 {¶ 19} We review a contempt sentence for an abuse of discretion by the trial court. In re Olivito, 7th Dist. No. 04-MA-42, 2005-Ohio-2701, at ¶ 53. Abuse of discretion connotes more than an error of law or fact; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 20} R.C. 2705.05(A) provides the sentences for contempt. It states, in relevant part:
 {¶ 21} "If the accused is found guilty [of contempt], the court may impose any of the following penalties:
 {¶ 22} "(1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both;
 {¶ 23} "(2) For a second offense, a fine of not more than five hundred dollars, a definite term of imprisonment of not more than sixty days in jail, or both;
 {¶ 24} "(3) For a third or subsequent offense, a fine of not more than one thousand dollars, a definite term of imprisonment of not more than ninety days in jail, or both."
 {¶ 25} While there is some dispute between the parties over whether this was appellant's second or third contempt finding, as to this assignment of error such discussion is not necessary.
 {¶ 26} The trial court erred in ordering appellant to serve 90 days in jail. This is so because the court originally only sentenced appellant to 60 days.
 {¶ 27} On November 14, 2003, the court found appellant in contempt (first finding of contempt). It sentenced him to 30 days and stayed the sentence providing appellant purge his contempt within 120 days.
 {¶ 28} On August 4, 2004, the trial court granted appellant until December 12 to purge himself of the contempt. It continued the stay on appellant's 30-day sentence and awarded appellee a lump sum judgment of $50,450 for his arrearage.
 {¶ 29} On December 17, 2004, the trial court found that appellant failed to purge the contempt or comply with its November 14, 2003 order. Therefore, it ordered the imposition of appellant's 30-day sentence.
 {¶ 30} Also on December 17, pursuant to appellee's motion, the trial court found appellant in contempt again (second finding of contempt). It stated that this was the court's second finding of contempt. The court sentenced appellant to 60 days in jail and fined him $500. The court stayed this sentence until February 1, 2005, giving appellant an opportunity to purge.
 {¶ 31} On February 3, the court issued two judgment entries. The first stated: "Imposition of the jail sentence previously ordered by the Court to begin February 1, 2005, pursuant to its Decision of December 17, 2004, is hereby stayed until further Order of the Court." The second judgment entry stated in part: "[T]he Defendant has requested a stay of the sixty (60) day jail sentence on a finding of contempt. Said sentence was to commence February 1, 2005. Over the objections of counsel for the Plaintiff, the Court has agreed to temporarily stay imposition of the Defendant's sixty (60) day jail sentence." It further stated that appellant and appellee were to file a motion and reply on the issue of the stay and that the court would then rule on appellant's request for a further stay.
 {¶ 32} On March 16, the court entered a judgment entry stating that it was ruling on appellant's motion for a stay. It then granted appellant's motion, continuing the stay until May 12, at which time it was to hold a review hearing.
 {¶ 33} The court held the scheduled hearing and entered its judgment on June 2, 2005. It stated in part: "The Court has considered the evidence, the pleadings, the arguments of counsel, the law and the tortured history of this case. Based upon the foregoing, the Court orders the previous sentence of ninety (90) days incarceration imposed." (Emphasis added.)
 {¶ 34} In this June 2, 2005 judgment entry, it seems clear that the trial court was simply ordering appellant to serve the jail time that it had originally sentenced him to back on December 17, 2004. The court was not imposing a new sentence on appellant nor did it make another finding of contempt at this time. It seems that the court simply thought that the sentence it had previously ordered was 90 days instead of 60 days. At this time, the court had previously ordered appellant to serve the 30-day sentence resulting from his first contempt finding. But it had not yet ordered appellant to serve the 60-day sentence that the court had stayed several times. The 60-day sentence was the only outstanding sentence that the court could have ordered appellant to serve.
 {¶ 35} Therefore, the court abused its discretion in ordering appellant to serve a 90-day sentence. It should have ordered him to serve the 60-day sentence it had previously stayed. Accordingly, appellant's first assignment of error has merit.
 {¶ 36} Appellant's second assignment of error states:
 {¶ 37} "THE TRIAL COURT COMMITTED AN ERROR OF LAW AND ABUSED ITS DISCRETION IN DETERMINING THAT THE APPELLANT FAUBEL HAD NOT MET HIS BURDEN OF PROVING HIS INABILITY TO COMPLY WITH THE VARIOUS SUPPORT ORDERS."
 {¶ 38} Here appellant argues that he presented ample evidence to prove his affirmative defense of impossibility of compliance with the court-ordered support. He points to his own testimony at the May 12, 2005 hearing for support. He further points out that appellee offered no evidence that he is underemployed or concealing assets. And he points out that he has made a good-faith effort to comply by paying $85,000 over the past few years towards the support order. Citing Winkler v. Winkler
(1991), 81 Ohio App.3d 199, 610 N.E.2d 1022.
 {¶ 39} On appeal, we will not reverse a trial court's finding of contempt absent an abuse of discretion. State ex rel.Ventrone v. Birkel (1981), 65 Ohio St.2d 10, 11,417 N.E.2d 1249.
 {¶ 40} First, appellee correctly points out that appellant failed to file transcripts of the August and December 2004 hearings. The December 2004 hearing is where the court made its second finding of contempt. Thus, appellant should have filed a transcript of this hearing. It is the appellant's duty to provide the reviewing court with an adequate transcript. Burrell v.Kassicieh (1998), 128 Ohio App.3d 226, 232, 714 N.E.2d 442, citing Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197,199, 400 N.E.2d 384. This is where appellant should have presented his defense of impossibility of compliance, not at his sentencing hearing. Since appellant failed to provide the court with the necessary transcript, we can presume the validity of the trial court's judgment. Id. However, the court's June 2, 2005 judgment entry specifically states that the court considered the evidence, among other things. Thus, it seems that the court may have made its findings regarding appellant's affirmative defense, at least in part, based on the evidence he presented at the May 2005 hearing.
 {¶ 41} Appellant should have filed a transcript of the December 2004 hearing. But given the trial court's reliance on the May 2005 hearing, we will nonetheless briefly review this assignment of error by examining the May 2005 transcript.
 {¶ 42} In this case, appellant does not challenge the fact that he failed to make all court-ordered payments. He instead raises the affirmative defense of inability to pay.
 {¶ 43} The inability to pay support is a recognized defense in child and spousal support contempt actions. See Ritchie v.Ritchie (Jan. 19, 1999), 12th Dist. No. CA98-05-063; Andersonv. Anderson (Dec. 1, 1998), 7th Dist. No. 96-CO-21; Rinehart v.Rinehart (1993), 87 Ohio App.3d 325, 622 N.E.2d 359. The inability to pay must be based on circumstances beyond the obligor's control. Id. Once a person seeking contempt demonstrates an obligor's failure to pay support, the burden of proof shifts to the obligor to prove his or her inability to pay.Nichol v. Nichol (May 8, 2000), 7th Dist No. 97-CA-143.
 {¶ 44} At the hearing appellant testified in his own defense. He stated that he is the sole proprietor of a business known as Dow Financial Services (Dow). (May 2005 Tr. 22). He testified that in 2003, Dow made $272,052.49, but that he only earned $8,031 and his wife, who was Dow's employee earned $61,623. (May 2005 Tr. 23). Appellant testified that in 2004, he earned $66,609.14. (May 2005 Tr. 29). Appellant claimed that it is impossible for him to pay the full amount he owes in child support arrearages and spousal support. (May 2005 Tr. 38-39). He stated that he has a business to maintain and it must come first. (May 2005 Tr. 39).
 {¶ 45} In an attempt to show a good faith effort to make his payments, appellant also testified to the following. He stated that since January 17, 2005, he has paid $32,000 towards his obligations. (May 2005 Tr.20-21). And he stated that his last payment was for $2,300. (May 2005 Tr. 40). Additionally, appellant testified that since August 2004, he has paid $40,500 towards his obligations. (May 2005 Tr. 60-61).
 {¶ 46} However, appellant also admitted to the following. He purchased a brand-new truck in March 2005, which he uses as his business and personal vehicle. (May 2005 Tr. 44). The truck cost $32,000. (May 2005 Tr. 67). Appellant counted this as a business expense. (May 2005 Tr. 36-37). Appellant's monthly payment is $555. (May 2005 Tr. 67). Additionally, he put $2,500 down on the truck. (May 2005 Tr. 67). Furthermore, since the divorce, appellant and his new wife acquired a house and encumbered it for over $300,000. (May 2005 Tr. 66). The monthly payment on the mortgage is $2,600. (May 2005 Tr. 64-65). And appellant stated that he makes more than $54,000 per year, which is the total yearly amount of his ordered spousal support and child support arrearage. (May 2005 Tr. 67).
 {¶ 47} In Nichol, 97-CA-143, we addressed a similar situation. Although we ultimately remanded the case because the trial court failed to provide an opportunity for the defendant to purge his contempt, we affirmed the court's finding of contempt and rejection of the defendant's defense of inability to pay. InNichol, we analyzed the defendant's defense as follows:
 {¶ 48} "Appellant's testimony does demonstrate that he was able to work and that he took on extra work when available, the profits from which he used to make some monthly support payments. (Tr. 34.) Appellant's testimony in general reveals that he continued to operate a business that was clearly unprofitable and which had been unprofitable for a number of years. Finally, Appellant revealed that he was able to come up with money to pay for a boat and for extras for his children, such as trips to camp and to Washington, D.C. or buying a saxophone, even though he was not making his full child support payments. (Tr. 39.) All of these factors were in Appellant's ability to control and therefore are not evidence in support of his defense of inability to pay.
 {¶ 49} "* * *
 {¶ 50} "While it is obvious to us that Appellant placed himself in the position to be in arrears, we also note that the record reflects that the trial judge carefully examined Appellant's arguments but found that it was Appellant's own poor decision making, such as keeping a boat until he defaulted on the loan, which created his inability to pay the full child support payments. (Tr. 51.)
 {¶ 51} "Appellant next argues that he was making partial child support payments and that, under Winkler v. Winkler
(1991), 81 Ohio App.3d 199, [610 N.E.2d 1022] this should have been construed as a good faith effort excusing his non-compliance. Appellant erroneously equates partial paymentswith good faith. Appellant's payments were sporadic and coincided with court filings, apparently in an effort to allay contempt proceedings against him. Only when an obligor pays his obligation to the full extent of his capability and/or with some consistency will there be deemed to be a good faith effort to meet his obligation." (Emphasis added.) Id.
 {¶ 52} In this case, like in Nichol, appellant is the sole owner of a business. Additionally, appellant's poor decision making has resulted in his not being able to make his support payments. Appellant chose to buy a brand-new $32,000 vehicle. Appellant chose to live in a house with a $2,600 monthly mortgage. Appellant has chosen not to seek a part-time job in order to earn extra income.
 {¶ 53} And as in Nichol, appellant is attempting to equate partial payment with good faith. However, appellant has not consistently paid on his obligations. He made one payment of $15,000. (May 2005 Tr. 21). Appellant made this payment in an attempt to convince the court to continue the stay on his jail sentence. See January 31, 2005 Motion to Stay. Furthermore, he had not yet paid anything on the lump sum judgment as ordered in August 2004. (May 2005 Tr. 61). Additionally, he stated that he paid nothing in August 2004. (May 2005 Tr. 60). And he only paid $2,100 in September 2004. (May 2005 Tr. 60). Appellant's payments have been highly inconsistent.
 {¶ 54} Given the above evidence, we cannot conclude that the trial court abused its discretion in finding appellant in contempt and rejecting his defense. Accordingly, appellant's second assignment of error is without merit.
 {¶ 55} Next, we must move on to consider appellant's three assignments of error in his appeal from the court's October 28, 2005 judgment. Appellant's first assignment of error states:
 {¶ 56} "THE TRIAL COURT COMMITTED AN ERROR OF LAW AND ABUSED ITS DISCRETION IN CONDUCTING A HEARING ON PLAINTIFF/APPELLEE'S MOTION TO SHOW CAUSE AND SUBSEQUENTLY FINDING DEFENDANT/APPELLEE [sic.] IN CONTEMPT WHEN THE TRIAL COURT HAD BEEN DIVESTED OF ITS JURISDICTION UPON THE FILING OF A NOTICE OF APPEAL IN CASE NO. 05-MA-101."
 {¶ 57} Appellant argues that the trial court was without jurisdiction to rule on appellee's July 28, 2005 motion to show cause why appellant should not be held in contempt again because this case was pending on appeal at that time. He contends that the trial court lost jurisdiction of this case when he filed his first notice of appeal on June 13, 2005. Appellant concedes that the trial court had jurisdiction to rule on appellee's motion to vacate the stay. However, he argues that the trial court's imposition of an additional term of incarceration and finding of contempt infringed upon this court's jurisdiction to rule on the merits of his first appeal. Specifically, appellant contends that the issue he raised in his first appeal, i.e. his inability to pay as an affirmative defense to contempt, has a direct effect on the trial court's post-appeal finding of contempt.
 {¶ 58} Once a case has been appealed, the trial court retains all jurisdiction not inconsistent with the appellate court's jurisdiction to reverse, modify, or affirm the judgment. Yee v.Erie County Sheriff's Dept. (1990), 51 Ohio St.3d 43, 44,553 N.E.2d 1354. This retained jurisdiction includes the trial court's jurisdiction to rule on collateral issues like contempt, appointment of a receiver, and injunction. State ex rel. SpecialProsecutors v. Judges, Court of Common Pleas (1978),55 Ohio St.2d 94, 97, 378 N.E.2d 162.
 {¶ 59} Appellee filed a motion on July 28, 2005, after appellant filed his notice of appeal from the June 2 judgment, to find appellant in contempt for failure to pay his full obligations since the court's June 2 judgment. The trial court had jurisdiction to rule on this motion. The judgment pending on appeal was from a contempt finding and sentence. However, appellee's July 28 motion only related to appellant's payments, or lack thereof, from June 2 forward. It did not affect the June 2 judgment pending on appeal. Furthermore, absent a stay of execution of the order to meet his support obligations, appellant should not be permitted a free pass to excuse his payments the entire time this case is pending on appeal. If this court were to agree that the trial court did not retain jurisdiction to hold appellant in contempt for failure to follow its orders after he filed a notice of appeal, then appellant would be, in effect, granted a stay of execution in a case where both the trial court and this court have denied him a stay. Thus, appellant's first assignment of error is without merit.
 {¶ 60} Appellant's second assignment of error states:
 {¶ 61} "THE TRIAL COURT COMMITTED AN ERROR OF LAW AND ABUSED ITS DISCRETION IN SENTENCING APPELLANT FAUBEL TO ONE HUNDRED TWENTY (120) DAYS IN JAIL SINCE REVISED CODE § 2505.05 PROVIDES A MAXIMUM SENTENCE OF NINETY DAYS IN JAIL."
 {¶ 62} Here appellant argues that the trial court abused its discretion in sentencing him to 120 days in jail on its most recent contempt finding. He contends that whether this was his third or fourth contempt finding, the trial court should not have sentenced him to more than 90 days pursuant to R.C. 2705.05(A). He asserts that this court must modify his sentence to comply with R.C. 2705.05(A)(3).
 {¶ 63} In its October 28, 2005 judgment entry, the trial court once again found appellant in contempt for failure to comply with the ongoing orders of the court. It then sentenced him to 120 days in jail. The court did not state if this was appellant's third or fourth finding of contempt. However, this fact is not relevant because the same sentencing provision applies either way.
 {¶ 64} R.C. 2705.05(A)(3) provides that if the trial court finds a defendant guilty of contempt "for a third or subsequent offense," it may impose "a fine of not more than one thousand dollars, a definite term of imprisonment of not more than ninety days in jail, or both." Nonetheless, this court has stated:
 {¶ 65} "However, it has been held that the courts are not limited in their sentencing for contempt by this legislative enactment. Citicasters Co. v. Stop 26-Riverbend, Inc. (2002),147 Ohio App.3d 531, 546-547, 771 N.E.2d 317 (7th Dist.), citingDombroski v. Dombroski (Sept. 28, 1999), 7th Dist. No. 506. We noted that the Supreme Court held that the legislature can prescribe procedure in indirect contempt cases but the power to punish for contempt is inherent in the courts. Id., citingCincinnati v. Cincinnati Dist. Council 51 (1973),35 Ohio St.2d 197, 207-208, 299 N.E.2d 686 (where the Court pronounced that it is highly doubtful that the legislature can limit the power of the court to punish for contempt).
 {¶ 66} "Under such holding, courts have allowed greater jail sentences and greater fines than those mentioned in R.C. 2705.05.Byron v. Byron, 10th Dist. No. 03AP-819, 2004-Ohio-2143;Caldwell v. Caldwell, 4th Dist. No. 02CA17, 2003-Ohio-1752;Latson v. Chrysler Corp. (June 14, 2000), 9th Dist. No. 19478."Olivito, 7th Dist. No. 04-MA-42, at ¶ 46-47.
 {¶ 67} Accordingly, the trial court was not limited in this case to the sentence prescribed by R.C. 2705.05(A)(3) as appellant alleges. As stated previously, we review contempt sentences for abuse of discretion. Id. at ¶ 53.
 {¶ 68} Under this standard of review, the trial court acted within its discretion in sentencing appellant to 120 days in jail upon finding him in contempt. In its journal entry, the court noted that it examined the history of this case. It has been in constant litigation since the parties divorced because appellant has not complied with the agreed judgment entry of divorce regarding both child and spousal support orders. Additionally, this finding of contempt was at least appellant's third. Furthermore, in sentencing appellant the court realized that if it ordered appellant to serve his sentence straight through, appellant would not be able to comply with his support orders or to purge his contempt. Therefore, the court ordered appellant to serve his sentence every weekend from 6:00 p.m. on Friday evenings until 6:00 p.m. on Sunday evenings. It did this to enable appellant to continue to run his business and earn an income. By doing so, the court gave appellant the opportunity and the means by which to purge his contempt by paying current his support obligation.
 {¶ 69} Accordingly, appellant's second assignment of error is without merit.
 {¶ 70} Appellant's third assignment of error states:
 {¶ 71} "THE TRIAL COURT COMMITTED AN ERROR OF LAW AND ABUSED ITS DISCRETION IN DETERMINING THAT THE APPELLANT FAUBEL HAD NOT MET HIS BURDEN OF PROVING HIS INABILITY TO COMPLY WITH THE VARIOUS SUPPORT ORDERS."
 {¶ 72} Here appellant restates the identical argument set out above in his second assignment of error in his first appeal. Thus, we need not analyze it again. Based on the evidence and reasoning set out previously, appellant's third assignment of error is without merit.
 {¶ 73} For the reasons stated above, the trial court's June 2, 2005 judgment is hereby modified to reflect that appellant's 90-day sentence is converted to a 60-day sentence. It is affirmed in all other respects. The trial court's October 28, 2005 judgment is affirmed.
Vukovich, J., concurs.
Waite, J., concurs.
[1] The judgment entry originally sentencing appellant imposed a 60-day sentence. This is an issue appellant raises that will be addressed later in this opinion.
[2] See footnote one.