[Cite as *Weaver v. Weaver*, 2016-Ohio-1356.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

FIRMAN L. WEAVER

    Appellee

    v.

DEANNA K. WEAVER

    Appellant

C.A. No.      15AP0015

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    10-DR-0179

DECISION AND JOURNAL ENTRY

Dated: March 31, 2016

MOORE, Judge.

{¶1}    Defendant-Appellant Deanna K. Weaver appeals from the judgment of the Wayne County Court of Common Pleas, Domestic Relations Division. We affirm.

I.

{¶2}    Ms. Weaver and Plaintiff-Appellee Firman L. Weaver were married on October 6, 2001 and three children were born of their marriage. Mr. Weaver filed for divorce in April 2010. While Ms. Weaver failed to attend the final hearing, her counsel was present and the parties were granted a divorce in December 2010. At the hearing, the guardian ad litem discussed Ms. Weaver's history of drug abuse and suicide attempts and recommended that Mr. Weaver be named the residential parent and that Ms. Weaver have no parenting time with the children. The trial court agreed and determined that Ms. Weaver would have no parenting time with the children unless Mr. Weaver specifically agreed to it. However, the issue of parenting time could be reviewed upon request of either party. As part of the decree, inter alia, Ms. Weaver was

responsible for a deficiency on a loan on a van that was repossessed. She was also ordered to make $50 per month payments for child support.

{¶3}   In May 2012, Mr. Weaver filed a motion for Ms. Weaver to show cause why she should not be held in contempt for her failure to pay the deficiency on the van and failure to pay child support. Additionally, Mr. Weaver sought payment of the attorney fees incurred pursuing the motion for contempt. On October 31, 2012, upon consideration of a magistrate's decision concerning the same issues, the trial court found Ms. Weaver in contempt for failing to pay on the van deficiency and for failing to pay child support. The trial court concluded she owed $8,234 for the van deficiency and awarded Mr. Weaver $1,814 in attorney fees. The trial court sentenced Ms. Weaver to serve 3 days in jail but suspended the sentence on the condition that she comply with the orders of the court. The trial court ordered that the total amount of $10,048 accrue interest at a rate of 3% per year and that the total balance be paid in full within two years.

{¶4}   In May 2014, Mr. Weaver filed a motion seeking interim attorney fees for costs incurred in litigating Ms. Weaver's motions. On June 11, 2014, the magistrate entered an order awarding Mr. Weaver $3,500 in interim attorney fees and ordering the amount to be paid within 60 days. Ms. Weaver filed objections to the order. The trial court characterized her filing as a motion to set aside and overruled it.

{¶5}   On August 15, 2014, Mr. Weaver filed a motion for Ms. Weaver to show cause why she should not be held in contempt for failing to comply with the October 31, 2012 order in that she had not made payments towards the $8,234 owed on the van deficiency, and that she failed to comply with child support orders or to notify the child support agency of changes of her address and employment status. Additionally, Mr. Weaver alleged that she failed to make

payments on the $3,500 attorney fee award ordered in the June 2014 order. Mr. Weaver also sought attorney fees accrued for pursuing the motion for contempt.

{¶6} The magistrate held a hearing on the motion for contempt on January 20, 2015 and issued a decision recommending that Ms. Weaver be found in contempt and ordered to serve 60 days in jail. The magistrate further recommended that the trial court reaffirm all prior orders and award Mr. Weaver $1,470 in attorney fees for pursuing the motion for contempt. That same day, the trial court entered judgment finding Ms. Weaver in contempt for failing to comply with the court's October 31, 2012 and June 11, 2014 orders and sentencing her to serve 60 days in jail. The trial court reaffirmed all prior orders and ordered Ms. Weaver to pay $1,470 in additional attorney fees. Ms. Weaver was to pay those attorney fees and all prior attorney fees in full prior to March 11, 2015.

{¶7} Ms. Weaver filed objections to the magistrate's decision. Specifically, she challenged the conclusion that she had the ability to comply with the prior orders. Additionally, she argued that she should have been allowed time to purge the finding of contempt, and she opposed the award of the additional attorney fees. The trial court overruled her objections. Ms. Weaver appealed and filed a motion to stay her sentence pending appeal, which was granted. She has raised two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN FINDING [MS.] WEAVER IN CONTEMPT FOR FAILURE TO COMPLY WITH THE ORDERS OF THE COURT DATED OCTOBER 31, 2012, AND JUNE 11, 2014 WHERE THE EVIDENCE DEMONSTRATED THAT [MS. WEAVER] WAS UNABLE TO COMPLY WITH THOSE ORDERS.

{¶8} Ms. Weaver argues in her first assignment of error that the trial court erred in concluding she was in contempt for failing to comply with the court orders because she demonstrated that she was unable to comply with the orders. We do not agree.

{¶9} "This Court reviews contempt proceedings for an abuse of discretion." *Zemla v. Zemla,* 9th Dist. Wayne No. 11CA0010, 2012-Ohio-2829, ¶ 8. An abuse of discretion connotes that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶10} "R.C. 2705.02 governs acts in contempt of court and provides, in relevant part: 'A person guilty of any of the following acts may be punished as for a contempt: (A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer[.]'" *Badertscher v. Badertscher,* 9th Dist. Wayne No. 14AP0019, 2015-Ohio-2189, ¶ 7, quoting R.C. 2705.02. "Contempt may be criminal or civil, as generally evidenced by the character and purpose of the sanction imposed." *Badertscher* at ¶ 7. Because "the alleged contempt occurred outside of court and the court's sanction was intended to punish instead of remedy a situation, it involves indirect criminal contempt." *Collette v. Baxter,* 9th Dist. Summit No. 24519, 2009-Ohio-5151, ¶ 31. *See also Liming v. Damos,* 133 Ohio St.3d 509, 2012-Ohio-4783, ¶ 12 ("[C]riminal contempt is usually characterized by unconditional prison terms or fines. * * * The purposes behind the sanction in criminal contempt are primarily to punish the contemnor and to vindicate the authority of the court."). "Indirect criminal contempt must be proven beyond a reasonable doubt." *Collette* at ¶ 31, quoting *Estate of Harrold v. Collier,* 9th Dist. Wayne Nos. 07CA0074, 08CA0024, 2009-Ohio-2782, ¶ 17; *see also Liming* at ¶ 11.

{¶11} The trial court entered judgment finding Ms. Weaver in contempt for failing to comply with the court's October 31, 2012 and June 11, 2014 orders. Here, Ms. Weaver does not

appear to contend that she complied with the court orders; instead, she argues that she satisfied her burden to establish the defense of inability to pay. "It has long been held that in a contempt proceeding, inability to pay is a defense and the burden of proving the inability is on the party subject to the contempt order." *Liming* at ¶ 20.

**{¶12}** At the hearing, Ms. Weaver testified that she has a mental illness that she categorized as post-traumatic stress disorder "from pretty much living ten years of torture." She maintained that, at the time of the hearing, this disability made it impossible for her to work and that she received $733 per month from Social Security Disability. She testified that she became eligible for Social Security Disability in February 2012, but did not begin receiving payments until March 2013. She contended that Social Security did not send her a lump sum for the back payments, instead spreading the back payments out throughout the course of the year.

**{¶13}** Ms. Weaver was last employed in May 2013 at a restaurant, where she made $3.17 an hour plus tips and worked approximately 20 hours per week for 4 or 5 months. She was fired from that job shortly before she went to Egypt. Ms. Weaver also held a license as a registered nurse, but failed to renew it and would need to do continuing education to reinstate it. The last time she worked as a nurse was in 2011.

**{¶14}** Ms. Weaver testified that she flew to Egypt in August 2013 to marry an Egyptian man she met through a friend. She stayed there until January 2014. Her husband remained in Egypt when she returned to Ohio. She indicated that her husband paid for the trip and her expenses while she lived in Egypt. She testified that her father continued to receive her Social Security income while she was abroad, which he used to pay her student loan and child support payments. She testified that the remainder of that money would have gone into her father's account. At the time of the hearing, Ms. Weaver had an infant daughter with her new husband.

Ms. Weaver testified that her husband could not send money out of Egypt to help support them and that he paid no child support, despite the fact that he was employed as a lawyer. Specifically she stated that, "[a] new president [of Egypt] has outlawed any Egyptian currency to leave the country." Despite marrying her husband in August 2013, Ms. Weaver could not explain why her 2013 tax returns indicated that she was single.

{¶15} With respect to living expenses, Ms. Weaver stated that she lived with her parents and that she paid them between $425 to $500 per month for rent, food, and utilities. Ms. Weaver testified that she had a cell phone at no cost to her through a government program as well as government provided medical benefits for herself and her young child. Additionally, Ms. Weaver testified that she owed $120 per month in student loans and had an approximate balance of $9,000 on the loans. She indicated that she did not receive a tax refund in 2012 because she owed money on her student loans. Ms. Weaver's expenses included her $50 per month child support payment; she maintained that she was current on her child support payments. Ms. Weaver also put money on a card for her oldest daughter every month so that the oldest daughter, who was 16 at the time of the hearing, would have money for gas.

{¶16} Ms. Weaver testified that she did not own any real property or vehicles and that she had no stocks, bonds, or savings. She testified that without her parents' help, she and her infant daughter would be homeless.

{¶17} Ms. Weaver indicated that she was aware that she was ordered to pay $3,500 for attorney fees based upon the June 11, 2014 court order. She acknowledged that she only made a single $100 payment towards that obligation via a check dated November 2014. Ms. Weaver averred that her parents helped her pay that obligation and her other legal fees. Ms. Weaver also acknowledged that she owed an additional $1,814 in attorney fees, as well as money for the

deficiency on the van. She agreed that she had failed to make any payments but stated that she could not afford to pay what was owed.

{¶18} At the hearing, Ms. Weaver presented no exhibits or documentary evidence to substantiate her claim that she was unable to pay her court-ordered obligations, nor has she referenced any documents in the record, aside from the transcript of her testimony, that would support her claim. The magistrate found there were credibility issues with some of Ms. Weaver's testimony, including whether her husband could send money out of Egypt to support her and her child and with respect to whether she received several back payments from Social Security as opposed to a lump sum. Ultimately, the magistrate concluded that Ms. Weaver could have made *some* payment towards her court-ordered obligations and that the $100 payment in November 2014 was not a good faith effort. Given the trial court's judgment entry, it is clear that the trial court likewise concluded there was insufficient evidence to support Ms. Weaver's claim that she was unable to pay.

{¶19} In light of the record before us, including the lack of documentary evidence submitted at the hearing to support her claim, we cannot say the trial court abused its discretion in finding her in contempt. There was evidence that from August 2013 until January 2014, Ms. Weaver had her expenses paid by her husband while she was in Egypt. Nonetheless, she was still receiving Social Security payments, and it is unclear what that extra money was used for, aside from paying Ms. Weaver's student loan and child support payments; payments that would have only totaled $170. Additionally, there was testimony that Ms. Weaver put money on a card just about every month so that her daughter could have gas money. Given that evidence, the trial court could have reasonably concluded that Ms. Weaver had money that she could have used to pay at least a small portion of her court-ordered obligations. Thus, the trial court could have

reasonably found that Ms. Weaver failed to make a good faith effort to meet her obligations. This Court has said in cases in which a party argues an inability to pay, "the issue is not whether [the party] could have paid the required [obligation]. The issue is whether [the party] attempted in good faith to comply with the existing court order." *Winkler v. Winkler,* 81 Ohio App.3d 199, 203 (9th Dist.1991). Where full compliance with a court ordered obligation is not possible, the party still must demonstrate that he or she made a good-faith effort to comply. *Id.* Absent that showing, "the court [i]s within its authority in finding [the party] in contempt." *Id.* The trial court was not unreasonable in concluding that Ms. Weaver failed to demonstrate that she was making a good-faith effort to comply with the court orders or in concluding that she therefore failed to meet her burden to establish a defense of inability to pay. *See Musselman v. Musselman,* 9th Dist. Wayne No. 03CA0032, 2004-Ohio-833, ¶ 23 ("By failing to show the court that he was making such an effort, Appellant failed to demonstrate his inability to comply with those prior orders.").

{¶20} Ms. Weaver additionally argues that if the trial court believed that she could have paid some amount, it should have made a determination of what she was capable of paying and given her an opportunity to purge her contempt. However, it is clear that the trial court's purpose in holding Ms. Weaver in contempt was to punish her; thus, it amounted to criminal contempt. *See Liming,* 133 Ohio St.3d 509, 2012-Ohio-4783, at ¶ 12. Because the trial court exercised its criminal contempt authority, it was not required to offer Ms. Weaver an opportunity to purge prior to imposing a jail sentence. *See Musselman* at ¶ 14.

{¶21} In light of Ms. Weaver's limited arguments, we overrule her first assignment of error.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED WHEN IT ORDERED [MS. WEAVER] PAY ADDITIONAL ATTORNEY FEES IN THE AMOUNT OF ONE THOUSAND FOUR HUNDRED SEVENTY ($1,470.00) DOLLARS.

**{¶22}** Ms. Weaver asserts in her second assignment of error that the trial court abused its discretion in awarding Mr. Weaver an additional $1,470 in attorney fees.[1]

**{¶23}** Ms. Weaver, aside from noting that the standard of review is an abuse of discretion, has pointed this Court to no law or authority that would substantiate her argument that the trial court abused its discretion. She has not indicated what law applies in determining whether an award of attorney fees is authorized, nor has she explained how the trial court's actions were an unreasonable, arbitrary, or unconscionable application of that law. Given the undeveloped nature of Ms. Weaver's argument, we overrule it on that basis. *See* App.R. 16(A)(7); *see also Cardone v. Cardone,* 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

**{¶24}** Ms. Weaver's second assignment of error is overruled.

III.

**{¶25}** The judgment of the Wayne County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

[1] It is unclear from the record how the magistrate and trial court concluded that $1,470 was an appropriate award of attorney fees. Mr. Weaver's attorney averred, via an affidavit that was admitted as an exhibit at the hearing, that Mr. Weaver would have incurred $1,278.37 in attorney fees up to and including the day of the hearing. However, as the amount is not challenged on appeal, we do not further consider the issue.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

CARLA MOORE
FOR THE COURT


HENSAL, P. J.
SCHAFER, J.
CONCUR.


APPEARANCES:

DAVID C. SHELDON, Attorney at Law, for Appellant.

RENEE J. JACKWOOD, Attorney at Law, for Appellee.